IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SARA BREZINSKI, individually and on behalf of all others similarly situated, | : : : : : : | CIVIL ACTION |
| v. | | NO. 20-cv-4939-JMY |
| WIDENER UNIVERSITY, | | |

**MEMORANDUM**

**YOUNGE, J.**                                                                                       **JANUARY 28, 2022**

      In reaction to government mandated closures and the life-threatening consequences of the novel coronavirus outbreak, in early 2020, Widener University shuttered its campuses. Rather than come to a grinding halt, however, Widener moved its classes online. Many would agree that these measures were prudent and unavoidable. But how Widener has managed the financial aspects of this process has become a central concern for Plaintiff and other students, who have paid thousands of dollars in tuition and fees.  What followed is a putative class action complaint alleging the inability of Widener, with brick-and-mortar locations, to deliver services as promised as it transitioned from in-person courses to an online learning model. Plaintiff has alleged that because Widener cancelled all in-person activities and instruction, that she and other similarly situation students were deprived of the benefit of their bargain.  In particular, Plaintiff argues that she received a materially different education of reduced value than what she and other students were promised.

      This case, like many similar actions filed against educational institutions throughout the country, present novel legal issues about what happens when the unexpected occurs, and the only

written expression of the parties' agreement– such as course catalogs, registration materials and student handbooks – hardly look like a comprehensive contract. Now before this Court is Defendant Widener University's Motion to Dismiss. This matter is briefed and appropriate for disposition without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth below, the Court grants the Motion.

I.  BACKGROUND

Plaintiff Sara Brezinski was a full-time graduate student pursuing a Master's of Education in Human Sexuality Studies at Widener University. (ECF No. 1 at 5.) On or about January 13, 2020, classes for the spring semester began at Widener and were scheduled to end on or around May 8, 2020. (*Id.* at 5.) For the spring semester, Plaintiff paid $5,800 out-of-pocket to Defendant in tuition and certain mandatory fees, such as a technology, graduate student and health fee. (*Id.*) Prior to enrolling in Widener's spring 2020 semester and paying tuition and fees, Plaintiff consulted Widener's course catalog and the course registration process. (*Id.*) The online registration process at Widener permitted students to pick classes that were "On-Line" or at the "Main Campus" location. (*Id.* At 3-5.) For the classes Plaintiff registered for, none made any mention of online learning. (*Id.*) Indeed, course specific syllabi included information regarding the on-campus class location such as the building and classroom number along with meeting dates and times. (*Id.*). Widener's class attendance policy emphasized that "[r]egular attendance and class participation are important factors in student learning," and that faculty are "expected to articulate this idea …[and to]…monitor student progress and attendance regularly," but nothing implied in-person learning. (*Id.*) Plaintiff alleges that her understanding and belief was that every course she was enrolled in, was to be taught in-person. (*Id.*) Plaintiff also alleges that she "would not have paid as much, if any, tuition for the Spring 2020 semester at Widener

had she known that the courses would not, in fact, be taught in-person." (*Id.*)  Plaintiff states in her Complaint that Widener's tuition and fees for in-person learning are higher than for online courses and programs.[1]  (*Id.* at 10.)

In early 2020, the Covid-19 pandemic arrived profoundly impacting the daily life of most Americans and almost every business. The educational sector was not sparred. For the benefit and safety of all, and in response to the global pandemic, on March 11, 2020 Widener announced that it was suspending all in-person classes effective March 12, 2020 and would transition to online learning for the rest of the semester on March 19, 2020.  (ECF No. 1 at 3-4; ECF No. 14-3 at 116-124.)  On March 19, 2020, Pennsylvania Governor Tom Wolf and the Pennsylvania Department of Health issued an order that prohibited all colleges and universities from resuming in-person instruction closing the Widener campus for the remainder of the 2019-2020 academic year. (ECF No. 14-3 at 83-86.)

By the time universities and colleges were permitted to reopen, the spring 2020 semester had already concluded. Plaintiff asserts that the on-line learning options offered by Widener, and which she received, was in no way equivalent to the in-person education Plaintiff paid for, depriving her of the opportunity for collaborative learning and in-person dialogue, feedback, and critique. (*Id.*). She also alleges that Plaintiff has not received a refund for any portion of her tuition or fees paid for this semester, despite the fact that in-person classes were shut down. (ECF No. 1 at 3-4.)  As a result, on October 6, 2020, Plaintiff Sara Brezinski brought this action on behalf of herself, and others similarly situated, seeking a partial refund of tuition and fees paid to

---

[1] Plaintiff's implicit suggestion is that it also costs less to provide online coursework.  While at the motion to dismiss stage, the Court accepts Plaintiff's allegations as true, we note that discovery could reveal that the costs to Widener were increased by shifting online.  Nevertheless, for the reasons discussed below, whether Plaintiff paid more for in-person courses, or it costs Widener more to provide in-person learning, is not relevant to the disposition of this matter.

Widener University, asserting breach of contract, unjust enrichment, conversion and money had and received common law claims. On November 30, 2020, Defendant filed its Motion to Dismiss.

## II.   LEGAL STANDARD

To survive a Rule 12(b) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Tombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. Cty of Allegheny*, 515 F. 3d 224, 233 (3d Cir. 2008). Rather, the plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n. 8). In other words, the complaint must contain facts which, if proven later, support a conclusion that a cause of action can be established.

In considering a motion to dismiss under Rule 12(b)(6), we first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions. Then, we determine whether the alleged facts make out a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F. 3d 203, 210-11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). All well-pleaded allegations in the complaint must be accepted as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in the plaintiffs' favor. *See McTernan v. City of York*, 577 F. 521, 526 (3d. Cir. 2009).

In deciding a motion to dismiss, courts generally consider only the allegations of the complaint, exhibits attached to the complaint and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F. 2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S.

1042 (1994).   Courts may consider documents incorporated by reference in the complaint. *California Pub. Employees' Ret. Sys. V. Chubb Corp.*, 394 F. 3d 126, 134 (3d Cir. 2004).   However, courts may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp.*, 998 F.2d at 1196.  Courts may do so because "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice . . . and has relied upon [those] documents in framing the complaint."  *Schmidt v. Skolas*, 770 F. 3d 241, 249 (3d Cir. 2004) (internal quotation marks, alteration, and citation omitted).  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."  *Pension Benefit Guar. Corp.*, 998 F. 2d at 1196 (citing *Goodwin v. Elkins & Co.*, 730 F. 2d 99, 113 (3d Cir. 1984)).  Courts may consider these documents without having to convert the motion to one for summary judgment. *Id.*

### III. DISCUSSION

#### A. Breach of Contract

In its Motion, Defendant argues that Plaintiff's allegations are tantamount to an educational malpractice claim, which is not cognizable under Pennsylvania law. Under Pennsylvania law, which applies in this diversity action, there is a distinction between an action for breach of a contractual obligation and one for educational malpractice; while the former may be maintained, the latter may not.  *See Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397, 403 (Pa. Super. 1992.); *see also Glenn Distribs. Corp. v. Carlisle Plastics, Inc.*, 297 F.3d 294, 300 n. 3 (3d Cir. 2002) (applying Pennsylvania substantive law in diversity action).  The prohibition on educational malpractice claims stems from the court's recognition of the subjective nature of what constitutes

a quality education, the lack of a workable standard of care, and the need to afford flexibility to educational institutions.

Plaintiff's Complaint, however, is not challenging the quality of Widener's education. Rather, Plaintiff simply argues that the value of in-person classes and the on-campus experience that Defendant allegedly promised is greater than the remote learning that she experienced. In other words, Plaintiff alleges Widener retained payment for services that were not delivered. As the majority of courts, including within this District, have concluded, this type of claim is grounded in contract, not educational malpractice, and therefore, is justiciable. *See Smith v. Univ. of Penn.*, No. 20-2086, 2021 U.S. Dist. LEXIS 75473 at *4 (E.D. Pa. April 20, 2021) ("This is not a claim for educational malpractice. It is simply an action for breach of contract."); *see, e.g. Omori v. Brandeis Univ.*, No. 20-11021-NMG, 2021 U.S. Dist. LEXIS 71969, at * 2 (D. Mass. Apr. 13, 2021); *Saroya v. Univ. of the Pacific*, 503 F. Supp. 3d 986, 996 (N.D. Cal. 2020); *Warner v. Wartburg Coll.*, No. 21-cv-2029, 2021 U.S. Dist. LEXIS 142458 (N.D. Iowa Jul. 30, 2021).

Widener, painting itself as a co-equal victim of the pandemic, also goes on at length about how its decision to move classes online was justified. Whether Widener had a good faith reason to shift classes online due to the unforeseen pandemic does not resolve the question of who should bear the cost of collateral damage to Plaintiff's interests based on the contractual expectations of the parties. Rather, this case is about where that financial risk, if any, is contractually allocated.

Plaintiff's argument is that she entered into both an "express" and "implied" contractual agreement with Defendant where in exchange for tuition and fees, Defendant was obligated to provide on-campus services, including in-person class instruction. Unfortunately, she never

points to any explicit language by Widener showing that the Defendant promised that students were guaranteed in-person classes or that any of the fees were for in-person services. Instead, she argues that because students can register for "on-line" and "main campus" classes separately, and that course-specific syllabi and material refer to the class location, by implication, along with marketing material, Widener has promised on-campus, in-person education.  She also argues that she is entitled to reimbursement of certain fees, such as a technology fee and a graduate student fee, due to Widener's shift to remote learning but points to nothing that establishes that these fees were for in-person physical services. Because Plaintiff does not identify a specific contractual provision that establishes Widener had an obligation to provide in-person classes and educational services, Defendant argues that Plaintiff's breach of contract claim should be dismissed.[2] For the reasons discussed *infra*, the Court agrees with the Defendant on this ground.

Under Pennsylvania law, the relationship between a student and a private educational institution is contractual.  *Reardon v. Allegheny Coll.,* 926 A.2d 477, 480 (Pa. Super. 2007) (citing *Barker v. Trustees of Bryn Mawr Coll.*, 122 A. 220, 221 (Pa. 1923)).  A student seeking to bring a breach of contract claim against an educational institution must allege "a specific contractual undertaking which was breached, clearly and directly resulting in at least some demonstrable damages." *See Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397, 401 (Pa. Super. 1992); *see also Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 133 (3d Cir. 2011) (citing *Swartley v. Hoffner*, 734 A. 2d 915, 919 (Pa. Super. 1999).

---

[2] Defendant also argues that Plaintiff fails to allege legally cognizable damages because she alleges an "amorphous constellation of subjective benefits she associates with in-person instruction." (ECF No. 14-1 at 38.)  We note that at the motion to dismiss stage, this Court must accept Plaintiff's factual allegations in her Complaint as true. *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F. 3d 218, 229 (3d Cir. 2020).  But because the Court finds reason to grant the Defendant's Motion on other grounds, we need not address this issue.

Plaintiff cites to a host of cases from our sister courts and state courts which she believes supports the denial of Defendant's Motion. Those cases have, however, turned on the unique facts and state law involved. *See, e.g. Manny Chong v. Northeastern University,* No. 20-10844-RGS, 2020 WL 7338499 (D. Mass. December 12, 2020) (applying Massachusetts law which permits implied contracts that include the reasonable expectations of the students); *Rosado v. Barry Univ. Inc.,* No. 1:20-CV-21813-JEM, 2020 WL 6438684, at *1 (S.D. Fla. Oct. 30, 2020) (applying Florida law which permits implied contracts in education).; *Salerno v. Fla. S. Coll., No. 8:20-CV-1494-30SPF, 2020 WL 5583522, at *5* (M.D. Fla. Sept. 16, 2020) (same); *Gibson v. Lynn University,* No. 20-civ-81173, 2020 WL 7024463 (S.D. Fla. Nov. 11, 2020 (same); *Saroya v. Univ. of Pacific*, No. 5:20-cv-3196, 2020 WL 7013598 (N.D. Cal. Nov. 27, 2020) (applying California law which permits implied contract based on reasonable expectation of students); *Zahn v. Ohio University*, No. 2020-00371JD, 2020 WL 6163919 (Ohio Ct. Cl. Oct. 19, 2020) (applying a Ohio law and a heightened motion to dismiss standard that requires "beyond a doubt that the plaintiff can prove no set of facts."). In many of these cases, the state law at issue permits broader implied, breach of contract claims in the educational context.

To the extent that Plaintiff relies on an implied, breach of contract theory, as observed in *Smith v. University of Pennsylvania*, "a cause of action for breach of an implied promise is not cognizable under Pennsylvania law in the higher education context." 2021 U.S. Dist. LEXIS 75473 * 6 (E.D. Pa. Apr. 20, 2021). Indeed, the only implied contract Pennsylvania case law has recognized in the educational context is the "reasonable expectation on statements of policy by [the university] and the experience of former students that if he performs the required work in a satisfactory manner and pays his fees, he will receive the degree he seeks." *Gat v. Univ. of Pittsburgh of Com. Sys. Of Hihger Educ.*, 91 A. 3d 723, 731 (Pa. Super. 2014). In other words,

there is a right to an education and a degree, but the case law stops short of requiring more. *See Swartley*, 734 A.2d at 919-920; *see also Hart v. Univ. of Scranton*, No. 11-1576, 2012 WL 1057383, at * 3 (M.D. Pa. Mar. 28, 2012) (rejecting breach of contract claim against university based on implied contract theory).

Even if Pennsylvania law recognized an implied, breach of contract theory for failure to provide in-person classes, after drawing all reasonable inferences in Plaintiff's favor, Plaintiff's Complaint fails to establish a plausible claim that such a right should be implied here. The existence of a contract is established by the "written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." *Swartley*, 734 A.2d at 919. Despite borrowing or paying thousands of dollars to receive an education at a college or university, students rarely sign a single, integrated contract that governs the parties' relationship. Instead, students apply, the school admits them, the students pay tuition and then they pick and go to various classes that are given a value in course credits. If a student selects a course of study and accumulates a sufficient number of course credits, he or she will receive a degree from the educational institution. When students enroll and pay their tuition, they make the decision to go to a particular college and receive an education. There are a lot of potential reasons why a student might select a course of study in addition to the number of credits they are going to receive for that course. But nothing in a course catalog or registration portal is frozen in time.

While the materials that form the basis of contract can include the student handbook, school policies and procedures, bulletins, and other materials, it is understood that course catalogs, syllabi and registration materials generally show what a university or college *tentatively* planned, not what they *guarantee* will happen. For instance, perhaps the location of a class changes due

to unforeseen building repairs or a particular professor is no longer available to teach a course, due to illness or a scheduling conflict. To the extent information posted on a university's registration portal or course catalog encouraged Plaintiff or another student to enroll in what was thought to be an in-person class, this material does not, by itself, create a basis for an implied, breach of contract. If that were the case, then by the same logic, Widener promised hundreds of other details turning its course catalog and syllabi into an enforceable code. That cannot conceivably be true.  It is understood that these details can, and do often, change.

Nor is the outcome changed by the mere fact that in-person courses may or may not cost more.  Plaintiff contracted with Widener for a service which included enrolling in a course of study – how Widener allocated resources towards this service is within its sound educational discretion and it is not this Court's role to second-guess those types of decisions. Plaintiff also purports to utilize an express, breach of contract theory. But Plaintiff does not cite to a single statement in Widener's course catalog, syllabi or online registration portal which singles out in-person classes as the one feature that would not change. Without that type of language, there is no cause of action under Pennsylvania law for an express breach of contract claim by the mere fact that a course catalog, syllabi or registration portal indicated the location of a class as being in-person.[3]  For similar reasons, Widener's website and brochures distributed to prospective students also cannot be said to create a guarantee of in-person classes. Under longstanding Pennsylvania law, advertisements cannot constitute a legal offer to form a contract. *See Bourke v. Kelly*, 482 A.2d 240 (Pa. Super. 1984).  While Widener's promotional materials might conjure images of an on-campus environment, they amount to advertisements, which, without "some

---

[3] There is a world of difference between shifting classes to on-line learning in the absence of any affirmative guarantee, to not affording students an education and a denial of instruction. Nothing in this opinion should be taken to suggest that the latter would not be a breach of the agreement to educate.

language of commitment or some invitation to take action without further communication" cannot form a contract. *See Bourke*, 482 A.2d 240 (Pa. Super. 1984) (citing *Touraine Partners v. Kelly*, 482 A.2d 240 (Pa. Super 1984 and Restatement (Second) of Contracts § 26 cmt. b (1981). Thus, Widener's promotional material preceding enrollment cannot be said to become part of the contract with Plaintiff or other students.

Plaintiff's breach of contract claim boils down to her belief that the traditional model of in-person education is implied for brick-and-mortar educational institutions. But the only Pennsylvania case law permitting an implied theory supports the right to an education and degree, not the method and means. And while there are other courts holding that there is implied right to an in-person education, there is nothing in Pennsylvania law supporting that contention. Therefore, the Court grants Defendant's Motion to Dismiss as to Plaintiff's breach of contract claim.

### B. Unjust Enrichment

In the alternative to a breach of contract claim, Plaintiff brings a claim for unjust enrichment. Under Pennsylvania law, a plaintiff may not recover under a theory of unjust enrichment if the parties' relationship is governed by a written contract. *Scafer Elec, & Const. v. Mantia*, 67 A.3d 8, 13 (Pa. Super 2013), *aff'd on other grounds*, 96 A. 3d 989 (Pa. 2014) (citing *Wilson Area Sch. Dist. v. Skepton*, 895 A. 2d 1250, 1254 (Pa. 2006)); *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012) (Unjust enrichment is a "quasi-contractual doctrine that does not apply in cases where the parties have a written or express contract") (citing *Hershey Foods Corp. v. Ralph Chapek, Inc*., 828 F.2d 989, 999 (3d Cir. 1987)). Nevertheless, "a party may plead alternative theories of breach of contract and unjust enrichment when there is a dispute about the existence or validity of the contract in question." *Power*

*Restoration Int'l, Inc. v. Pepsico, Inc.*, No. 12-1922, 2013 U.S. Dist. LEXIS 148016, at *20 (E.D. Pa. Oct. 11, 2013) (citations and quotations omitted); *see also Khawaja v. RE/MAX Cent.,* 151 A. 3d 626, 633 (Pa. Super. 2016).   In this case, however, both Plaintiff and Widener agree that there is a contract that governs the parties' relationship. Widener does not argue that there was no valid contract, it simply alleges that the contract did not obligate Widener to provide an in-person education. In such circumstances, even when pled in the alternative, it is appropriate to dismiss a claim for unjust enrichment. *See Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d. Cir. 2014) ("Here, [the parties] had a contractual relationship, the existence and validity of which are not challenged. Thus, [the plaintiff's] claim for unjust enrichment, even when pled in the alternative, was appropriately dismissed."). Therefore, the Court will dismiss Plaintiff's unjust enrichment claim.

      C. **Conversion**

Plaintiff is also suing for conversion. Widener argues that Plaintiff's claim for conversion is barred by the gist of the action and economic loss doctrines.  Conversion is a tort by which the defendant deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification. *Chrysler Credit Corporation v. Smith*, 643 A.2d 1098, 1100 (1994), appeal denied, 652 A.2d 834 (1994). Pennsylvania's gist of action doctrine precludes a plaintiff from bringing a breach of contract claim as a tort claim. *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002). The gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, the doctrine prevents plaintiffs from re-casting ordinary breach of contract claims into tort claims." *Id.*  (internal citation omitted). Courts evaluate the "gist or gravamen of the cause of action stated in the complaint" to determine

whether, "although sounding in tort, [it] is, in actuality, a claim against the party for breach of its contractual obligations." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 53 (Pa. 2014).  Relatedly, the economic loss doctrine provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *Excavation Technologies, Inc. v. Columbia Gas Company of Pennsylvania*, 985 A.2d 840, 841 n.3 (Pa. 2009) (citing *Adams v. Copper Beach Townhome Cmtys.*, *L.P.*, 816 A.2d 301, 305 (2003)). The doctrine prevents a plaintiff from recovering under a tort theory when the plaintiff's only loss is purely economic. *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 (3d Cir. 2001) (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)). Here, the contract between Plaintiff and Widener is not incidental to the wrong complained of – Plaintiff alleges that Defendant was contractually obligated to provide an in-person education. The gravamen of Plaintiff's allegations is that Widener provided a materially different service when it shifted classes online, than what was promised.  Further, Plaintiff seeks solely economic damages for the alleged loss of the benefit of a bargain with Widener. Thus, the gist of action and economic loss doctrines squarely bar Plaintiff's claim for conversion.  *Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 684 (Pa. Super. 2003) ("Claims for conversion have been consistently disallowed where such claims are based on the same facts as the contract claim").  The Court, therefore, grant's Defendant's Motion as to Plaintiff's conversion claim.

### D.  Money Had and Received.

Plaintiff's final common law claim is "for money had and received." A cause of action for money had and received exists where money is wrongfully diverted from its proper use and falls into the hands of a third person who, in equity and good conscience, has an inferior right to it, the law implies a promise to pay over the funds to the person who has the greater right to them.

*Solomon v. Gibson*, 615 A. 2d 367 (Pa. Super. 1992). It requires that money be paid by mistake, under compulsion, and where consideration is insufficient. *White v. Conestoga Title Ins. Co.*, 53 A.3d 720, 723 (Pa. 2012). None of these conditions exist here. Plaintiff's claim is not that her tuition was diverted to a third person, or that she paid under compulsion or where there was no consideration. Rather, she questions the manner in which educational services were provided, not that they were never provided. Thus, Plaintiff has no cognizable claim for money had and received and the Court grant's Defendant's Motion as to this claim.

## V. CONCLUSION

For the reasons discussed above, the Court will grant Defendant's Motion to Dismiss. An appropriate Order will follow.

**IT IS SO ORDERED.**

                                                   **BY THE COURT:**

                                                 /s/ John Milton Younge
                                                 **Judge John Milton Younge**